UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JEFFREY SMITH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Cause No. 1:17-CV-00310-HAB |
| JACK COOPER TRANSPORT COMPANY INC., | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Jeffrey Smith ("Smith") violated the terms of his collective bargaining agreement when he received a speeding ticket while driving for Defendant Jack Cooper Transport Company, Inc. (JCT). JCT gave Smith notice of intent to discharge and, when Smith's time to file a grievance expired, JCT discharged him. An arbitration panel concluded that Smith's grievance was untimely filed and upheld his discharge. Smith disagrees and now says he was terminated because of his race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981. Before the Court is JCT's Motion for Summary Judgment (ECF No. 103). Because no genuine issues of material fact exist from which a jury could find intentional discrimination, JCT's Motion will be GRANTED.

## FACTUAL BACKGROUND

JCT transports new and pre-owned vehicles between assembly plants, vehicle distribution centers, ports, railheads, and car dealerships. (Brian Walters Decl., ECF No. 105-1, ¶ 4). JCT has signed the National Master Automobile Transporters Agreement (NMATA), a collective bargaining agreement between the Brotherhood of Teamsters Union and a group of unionized car haulers. (*Id.* ¶ 9). At the local level, JCT was a signatory to the Central and Southern Areas

Supplemental Agreement covering Truckaway, Driveaway, Local, and Garage Operations, and Michigan Office Workers. (*Id.* ¶ 10; Suppl. Agreement, ECF No. 105-1 at pp. 31-43).

a.  **Smith's Employment with JCT**

Smith, who is Black, became an employee of JCT in November 2015 after JCT acquired Allied Systems, Smith's former employer. Smith worked as an Automobile Transport Driver and was a member of the union, Teamsters Local 414 ("the Union"). (Smith Dep., ECF No. 105-2, pp. 65-69). As an Automobile Transport Driver, Smith was expected to "transport cars and light trucks, as assigned, in a timely and safe manner resulting in damage-free delivery of vehicles consistent with manufacturer requirements." (Smith Dep. p. 66 and Ex. 6). Smith worked out of the Fort Wayne terminal and reported to terminal manager, Brian Walters. (*Id.*).

As a condition of his employment, Smith was required to comply with JCT's policies and procedures in its employee handbook as well as those in the Supplemental Agreement. Article 40 of the Supplemental Agreement sets forth uniform rules and regulations and the penalties for violating those rules so that "all employees of [JCT] may know what duties are required of them in the general conduct of [JCT's] business." (Supplemental Agreement, p. 33)[1]. Section 8(b) sets forth miscellaneous conduct violations and lists the "failure to meet all requirements of local, state, and federal laws" as one such violation. Violations of § 8(b) are met with "[r]eprimands to layoffs and discharge in aggravated cases." (*Id.*). Other provisions in Article 40 permit an employee to appeal discipline or discharge.

Despite his contrary pronouncements, the record reveals that Smith was not a model employee. In less than a year with JCT, Smith received disciplinary actions for running out of fuel,

---

[1] Page number references to the Supplemental Agreement reflect ECF page numbers, not the page numbers on the original documents.

damage to a cargo unit (three times), excessive absenteeism, working over 14 hours, delaying of load or equipment, a rest break violation, flagrant disobeying of orders, and staying at a hotel without prior authorization. (Smith Dep. pp. 72-90, 95-97, 108-112). He received varied discipline for these violations – ranging from a corrective interview to a reprimand notice to a suspension. He also received two notices of intent to discharge, discussed below. Smith grieved some of the disciplinary actions.

On June 29, 2016, Smith received a speeding ticket while driving for JCT. (Smith Dep. p. 91). About a week later, JCT issued Smith a Notice of Probation/Investigation related to the speeding incident ("Probation Notice"). The Probation Notice permitted Smith to keep working on a probationary basis while JCT investigated. JCT concluded its investigation and on August 11, 2016, JCT issued Smith a Notice of Intent to Discharge Smith ("August 11 Notice") advising him that he failed "to meet all requirements of local, state, and federal laws" in violation of Article 40, § 8(b). (*Id.* at 95-97). Smith wrote "protest this" on the notice indicating his disagreement with it. (*Id.* at 98).

Under Article 40, Smith had ten days, or until August 21, 2016, to appeal the August 11 Notice. (Suppl. Agreement, Article 40). During this appeal period, Smith remained employed at JCT. Neither Smith nor the Union appealed.[2]

On August 30, 2016, Smith received a second Notice of Intent to Discharge for new violations ("August 30 Notice"). This time Smith again allegedly failed to meet all legal requirements by exceeding 14 hours of duty time and committing a rest break violation. (Smith

---

[2] In his response brief, Smith states that in the past he put grievances in a box dedicated to the filing of grievances and they had been considered timely. (Pltf's Resp., ECF No. 107, p. 1). He does not explicitly assert that he did so within the appeal timeline for the August 11 Notice, but he may imply as much. He states that "it should appear suspicious to the Court that suddenly facing termination that Plaintiff does not know the rules regarding filing of timely grievances." (*Id.*). Smith, however, has cited no evidence, not even a statement of his own, asserting that he filed a grievance for the August 11 Notice.

Dep. pp. 113-116). Smith again signed the notice "under protest" and filed a grievance the same day.

On September 2, 2016, Walters met with Smith in person about the August 11 Notice. Walters explained to Smith that JCT never received a grievance as to this notice and Smith would be discharged. Following that discussion, Smith received a final Discharge Notice and was terminated. Smith, in turn, filed a grievance referencing his discharge.

**b. Arbitration**

Article 7 of the NMATA provides the grievance machinery for unresolved appeals under the Supplemental Agreement. Article 7 establishes two joint committees, including the National Automobile Transporters Joint Arbitration Committee ("National Committee") and the Area Joint Arbitration Committees ("Central Committee") and provides the functions of each joint committee. (NMATA, Article 7, §§ 5, 7). The Central Committee functions "to settle disputes and grievances deadlocked" while the National Committee "settle[s] disputes and grievances which … are deadlocked or referred by any of the four (4) Joint Area Arbitration Committees." *Id.* If the grievance is deadlocked by the National Committee, it is referred to the three-member Board of Arbitration under §9 for resolution. After a hearing, "[t]he findings and decisions of a majority of the Board of Arbitration shall be final and binding on the parties and the employees involved." (*Id.* §9).

JCT requested a decision from the Central Committee upholding its determination that Smith's grievance was untimely as to the August 11 Notice. The Central Committee could not reach an agreement, leading to a deadlock. Following the deadlock of the Central Committee, the National Committee heard the grievance and deadlocked as well. (Smith Dep. p. 150). Smith attended the hearing and had an opportunity to speak and raise concerns. Smith testified that he

4

introduced himself and told them "how long I had been hauling cars. And I felt that the – company fired me over a misdemeanor charge and that I should be put back to work and made whole." (Smith Dep. p. 151). Smith asserts that he argued to the committees that his grievance was timely, and he believes that this is why both committees deadlocked. (Pltf's Resp. p. 2). He also states that the Union argued that Smith "clearly protested both of the intent to discharges and filed a grievance in a timely manner." (*Id.*). Smith did not raise the issue that he believed his termination was discriminatory because "the committees are not a forum to decide whether the Defendant acted in a discriminatory manner to the grievant." (*Id.* p. 4)

After both joint committees deadlocked, the grievance proceeded to the Board of Arbitration. After a hearing, the Board of Arbitration issued a written decision on November 17, 2016, finding that the grievance was not timely filed: "While Mr. Smith wrote 'I protest' on the August 11, 2016 Intent to discharge, that does not constitute the filing of a grievance." (Arbitration Decision, ECF No. 105-2, at 116-117).[3] Smith then filed his Charge of Discrimination alleging race discrimination five days later.

### c. Comparators

In his deposition, Smith identified one potential comparator, Douglas Schlautmann. (Smith Dep. pp. 174–175). JCT issued a Notice of Intent to Discharge to Schlautmann, who is Caucasian, for a rest break violation under Article 40, §8(b). Unlike Smith, Schlautman timely submitted a

---

[3] JCT shares that it has also asked a joint committee to uphold the discharge of other employees who failed to timely grieve discipline. (Andrew Farnsworth Decl., ECF No. 105-3, ¶5).[3] JCT points to Jerry Motter, a Caucasian driver, who received a Notice of Intent to Discharge in February 2018 (18 months or so after Smith received his notices) for violating Article 40, §3(e) by flagrantly disobeying orders to attend a safety class. (*Id.*). In June 2018, JCT asked the Central Automobile Transporters Joint Arbitration Committee to uphold Motter's termination after he failed to file a timely grievance. The committee upheld JCT's termination decision. (*Id.* ¶6). JCT offers this information as proof that it acted without discriminatory intent when it asked the joint committee to review the discharge because it has also done so with white employees.

5

grievance. The Central Committee heard the grievance and deadlocked. Ultimately, the parties settled the grievance and Schlautmann received a suspension. (Walters Decl. ¶16).[4]

## DISCUSSION

### A. *Legal Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the*

---

[4] In his response brief, Smith says that he is aware of other non-black individuals filing grievances against JCT who were not terminated. (Pltf's Resp. p. 4). He names Ehren Gerdes and Momcilo Nikolic and calls them similarly situated employees. A similarly situated employee is directly comparable to the plaintiff in all material respects. *Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 791 (7th Cir.2007). To determine whether employees are similarly situated, the court considers whether: they had the same job description; were subject to the same standards; had the same supervisor; had comparable experience, education, and other qualifications; were disciplined for similar infractions, etc. Here, other than Smith's own speculation, there is no citation to any evidence that these employees were similarly situated to Smith.

*City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

**B. Analysis**

When considering summary judgment on a race discrimination claim under Title VII and § 1981, the "singular question for the district court is whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021) (quoting *Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020); *see also Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 892 n.1 (7th Cir. 2018) ("We generally have applied the same prima facie requirements to discrimination claims brought under Title VII and section 1981."). To answer that question, the Court looks at the evidence holistically. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *see also Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016) ("[A]ll evidence belongs in a single pile and must be evaluated as a whole.").

Employing the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is one way that a plaintiff can help the court sift through the evidence to assess whether discrimination is established. Under that approach, the plaintiff must first produce evidence establishing a four-part prima facie case: (1) he is a member of a protected class; (2) he was performing at a level that met her employer's legitimate expectations; (3) he was subject to an adverse employment action; and (4) he was treated differently than a similarly situated person outside the protected class. *Igasaki,* 988 F.3d at 957. If the plaintiff establishes a prima facie case,

the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If the employer supplies a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to produce evidence that the defendant's reason is pretext for discrimination. *Id*. In this context, pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). But "a showing of pretext alone is not enough; the plaintiff must also show that the explanations are a pretext for the prohibited animus." *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 740 (7th Cir. 2013).

Smith has not produced any direct evidence of discrimination, so the Court analyzes his claim under the indirect approach. As for the prima facie case, JCT concedes elements one and three – Smith was a member of a protected class and was terminated. JCT disputes whether Smith can meet the remaining two elements: that he was meeting his employer's performance expectations and that similarly situated individuals outside the protected class were treated more favorably. A review of the undisputed evidence shows that Smith cannot meet his burden.

Addressing the two remaining elements in reverse order, Smith runs into considerable difficulty compiling an adequate slate of comparators. He contends "it is highly likely that other drivers received speeding tickets and did not have their employment terminated." (Pltf's Resp. p. 2). This could very well be a truthful statement, but it isn't helpful. Smith's conjecture that other drivers may have retained their employment following a speeding violation is not enough to defend against summary judgment. *Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) ("[G]uesswork and speculation [is] not enough to avoid summary judgment.").

Ultimately, Smith needs to extend his analysis further and produce evidence of a similarly situated non-black employee who failed to timely grieve a discharge under Article 40 and remained employed by JCT. Smith tries to do this by naming Schlautmann as a comparator. He contends

8

they both violated the same Article 40, §8(b), but Schlautmann was treated more favorably since he received a suspension instead of a discharge. JCT, in turn, asserts that Schlautmann is not a proper comparator because he is not similarly situated to Smith. Smith responds that any differences between he and Schlautmann are "razor thin" and should be disregarded.

The evidence doesn't allow the Court to conclude that Schlautmann was similarly situated to Smith in all material respects. While the "[c]ourts] are looking for comparators, not 'clone[s]'" *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir.2010), there is a material distinction between Schlautmann and Smith – Schlautmann filed a timely grievance and Smith did not. Schlautmann's violation under section 8(b) for a rest break violation and Smith's section 8(b) speeding infraction may well be violations of comparable seriousness under the Supplemental Agreement. *Coleman v. Donahoe*, 667 F.3d 835, 851 (7th Cir. 2012) (identical violations not required if the conduct were of comparable seriousness). But the crucial distinction comes down to the fact that Schlautmann engaged his rights under the Supplemental Agreement to timely grieve the violation and the Board of Arbitration found that Smith did not. Thus, while Schlautmann may have some general similarities with Smith, he is not a valid comparator and Smith has not met his burden under the fourth prong of the prima facie case.

Even if the Court is wrong, however, other problems loom in the distance for Smith. JCT argues that as an Automobile Transport Driver, Smith was expected to safely transport cars and light trucks to their destination in compliance with JCT's policies and the Supplemental Agreement. Smith's multiple violations during his employment, JCT argues, shows that he was not meeting JCT's legitimate performance requirements. Smith disputes JCT's assessment that he was not performing adequately, contending in his brief that his CDL driving record was clean and he had not had a speeding ticket for decades before this incident. He offers some explanation for

9

the "14 hour duty violation" and claims he contested his speeding ticket but, in both instances, he concedes that he violated JCT policies. The remaining violations, he claims, are not adequately supported in the evidence despite JCT's attaching the various disciplinary notices as part of its evidentiary designation.

When a defendant employer argues "that the employee was not meeting legitimate job expectations, the credibility of the employer's assertion is at issue for both the [satisfactory-work element] of the plaintiff's prima facie case and the pretext analysis." In such cases, the Court "may skip the initial burden shifting of the [*McDonnell Douglas* approach] and focus on the question of pretext." *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007).

At this stage, the question is not whether JCT's decision was right, but whether Smith presented sufficient evidence that JCT's reason was a lie for the action it took. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 ("[W]e look to 'whether the employer gave an honest explanation of its behavior.'") (quoting *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir. 1987)). The Court "does not sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Trib. Co.*, 797 F.2d 458, 464 (7th Cir. 1986).

On this score, Smith comes up empty. He has designated no evidence to discredit JCT's explanation that he was discharged for poor performance, specifically for violating Article 40, §8(b). To the contrary, he admits that he received the speeding ticket and the ticket is reproduced in the record. While Smith tries to discredit the investigation of the violation, his claims are high in speculation and assumptions, and low on evidentiary value.

Nor does Smith raise a factual question that he filed a timely grievance or that somehow JCT used the grievance procedure as a sham to terminate him based on race. *Jennings v. Illinois Dep't of Corr.*, 496 F.3d 764, 768 (7th Cir. 2007) (finding summary judgment appropriate where

plaintiff offered no evidence that the independent investigation and independent arbitration, in which he was offered the opportunity to present his side of the story, were shams or conduits for the employer's discriminatory animus). Smith had the opportunity in front of two joint committees and a Board of Arbitration to present his concerns and argue that his grievance was timely. He has not asserted that those committees were the cat's paw for the employer or that the persons on the committees/board had discriminatory motives. As a member of the Union, he was bound by the Board of Arbitration's decision that he did not file a timely grievance. *See Merryman Excavation v. Int'l Union of Operating Engineers, Local 150*, 639 F.3d 286, 293 (7th Cir. 2011) ("because the collective bargaining agreement establishes that any resolution of a grievance by majority vote of the joint committee is 'final and binding on all parties and individuals bound by' the agreement and not subject to appeal, we are not permitted to review the merits of the procedure or substance of the joint committee's decisions.").

In sum, JCT has set forth undisputed evidence that it discharged Smith for not living up to the terms of the Supplemental Agreement and JCT's policies. Smith has not set forth a genuine issue of material fact that JCT's legitimate nondiscriminatory reason for discharging him was a pretext for race discrimination. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015) (summary judgment is granted in the employer's favor "where the employer provides undisputed evidence that the adverse employment action is based upon the employee's poor job performance."). JCT's Motion for Summary Judgment (ECF No. 103) is GRANTED.

## **CONCLUSION**

For the reasons above, JCT's Motion for Summary Judgment (ECF No. 103) is GRANTED. The CLERK is DIRECTED to enter judgment in favor of the Defendant and against Plaintiff.

SO ORDERED on April 12, 2022.

                                                                      s/ Holly A. Brady  
                                                                      JUDGE HOLLY A. BRADY  
                                                                      UNITED STATES DISTRICT COURT